UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA SCOTT o/b/o J.C.D. a
minor,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

_____/

Case No. 4:18-CV-10803
District Judge Linda V. Parker
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 13), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Julia Scott, on behalf of her minor child, J.C.D., brings this action

under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her application for supplemental

security income (SSI) benefits.  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 13), the Commissioner's cross-motion for summary judgment (DE 17), and the administrative record (DE 7).

### A.    Background and Administrative History

On July 2, 2015, Plaintiff protectively filed an application for supplemental security income on behalf of her minor daughter, J.C.D., alleging that J.C.D. has been disabled since June 1, 2010.  (R. at 260-68.)  In her disability report, she alleges that J.C.D. is disabled due to Asperger's Syndrome (a form of autism), attention deficit hyperactivity disorder (ADHD), anxiety, insomnia and obsessive compulsive disorder (OCD)/behavior problems.  (R. at 302.)  Her application was denied on October 1, 2015.  (R. at 77-87.)

On November 25, 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 98-100.)  On February 22, 2017, ALJ Dennis M. Matulewicz held a hearing, at which Plaintiff, J.C.D., and a medical expert, Charles R. Black, M.D., testified.  (R. at 41-76.)  ALJ Matulewicz issued an opinion on May 11, 2017, which determined that J.C.D. was not disabled within the meaning of the Social Security Act.  (R. at 7-35.)

On June 7, 2017, Plaintiff submitted a request for review of ALJ Matulewicz's decision/order.  (R. at 256-59.)  However, on February 26, 2018, the

Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ

Matulewicz's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 12, 2018.

## B.    Plaintiff's Medical and Educational Evidence

The administrative record contains approximately 610 pages of medical and

educational records that were available to ALJ Matulewicz at the time of his May

11, 2017 decision. (R. at 273-97, 317-28, 360-99, 404-944 [Exhibits 1E, 5E, 16E-

17E, 1F – 28F].) These materials will be discussed in detail, as necessary, below.

## C.    The Administrative Decision

### 1.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of

the Act if he or she "has a medically determinable physical or mental impairment,

which results in marked and severe functional limitations, and which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The

Commissioner determines whether a child is disabled by analyzing three sequential

steps: first, the child must not be engaged in "substantial gainful activity;" second,

the child must have a "severe" impairment;[1] and third, the severe impairment must

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or
mental ability to do basic work activities." §§ 1520(c); 920(c).

3

meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a). To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment.  In addition, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  If a child's impairment does not meet a listed impairment, the impairment may be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  20 C.F.R. § 416.926a.

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). The six domains of functioning are:

(i) acquiring and using information;

(ii) attending and completing tasks;

(iii) interacting and relating with others;

(iv) moving about and manipulating objects;

(v) caring for yourself; and

(vi) health and physical well-being.

*Id.* § 416.926a(b)(1).  To be considered disabled, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a).  A domain has "marked" limitations when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(2).  A domain has "extreme" limitations when an impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(3).

### 2.   The ALJ's Decision

Applying this framework, the ALJ concluded that J.C.D. was not disabled. At **Step 1**, he determined that J.C.D. had not engaged in substantial gainful activity since July 2, 2015 and is currently a school-age child.  (R. at 13.)

At **Step 2**, the ALJ identified the following severe impairments: ADHD with anxiety, speech and language impairment with learning disorder in reading, and social and pragmatic communication disorder.  (*Id*. at 13-14.)  However, the alleged OCD and autistic spectrum disorder/Asperger's syndrome were determined to be non-severe.  (*Id.*)

5

At **Step 3**, the ALJ found that J.C.D.'s severe impairments did not meet or medically equal a listed impairment. (*Id*. at 14-16.) He further found J.C.D.'s impairments did not functionally equal a listed impairment. (R. at 17-30.) In making this determination, the ALJ determined that J.C.D. had a marked limitation in the domain of interacting and relating with others, but had less than marked impairment, or no impairment at all, in the domains of: 1) acquiring and using information; 2) attending and completing tasks; 3) caring for herself; 4) moving about and manipulating objects; and 5) health and physical well-being. (*Id*. at 23-30.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

 Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff identifies one claim of error: that the ALJ committed reversible error when he found that J.C.D.'s impairments did not functionally equal a listing. Specifically, Plaintiff alleges that the ALJ erroneously found that J.C.D. did not have at least marked limitations in the domains of attending and completing tasks and caring for yourself.  (DE 13 at 6, 16-23.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision finding less than marked limitations in those domains.  (DE 17 at 8-16.) The Undersigned agrees with the Commissioner.

> **1.     Substantial evidence supports the ALJ's finding that J.C.D.'s impairments do not functionally equal the severity of the Listings**

The ALJ considered the six functional domains and found that J.C.D. experienced marked limitation in interacting and relating with others, but had less than marked limitation, or no limitation, in the remaining five functional domains. (R. at 23-30.)  Plaintiff argues that the ALJ's findings that J.C.D. had less than marked limitations in two domains: (1) attending and completing tasks and (2) caring for yourself, are not supported by substantial evidence.  (DE 13 at 16-23.) Because Plaintiff only challenges the ALJ's findings in these two domains, she has waived any other challenges.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,*

8

447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.")

### a.    Attending and completing tasks

The domain of attending and completing tasks refers to "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). At the school-age level, a child should:

> . . . be able to focus [her] attention in a variety of situations in order to follow directions, remember and organize [her] school materials, and complete classroom and homework assignments. [She] should be able to concentrate on details and not make careless mistakes in [her] work (beyond what would be expected in other children [her] age who do not have impairments). [She] should be able to change [her] activities or routines without distracting [her]self or others, and stay on task and in place when appropriate. [She] should be able to sustain [her] attention well enough to participate in group sports, read by [her]self, and complete family chores. [She] should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(g)(2)(iv).

The ALJ found with respect to this functional domain that:

> The claimant has less than marked limitation in attending and completing tasks. The claimant receives resource room services, but her difficulties do not appear to be due to cognitive impairment or a specific disorder in learning. She has average to low average ranges in reading; she struggles with reading and reading comprehension and has a low average IQ. She possesses below average receptive language and low average expressive language skills and significant deficits were

identified in the areas of complex receptive language, sustained attention, and behavior. Her adaptive behavior functioning was measured significantly lower than expected. She has a neurodevelopmental disorder with associated attention regulation problems, anxiety, as well as social and language difficulties that can limit her alertness, learning, and executive functioning. She has trouble with initiating interactions with peers and demonstrating appropriate social interaction skills in social situations. She also struggles when working with peers on academic tasks. However, it is noted she is pleasant and a friendly and social girl that gets along well with others with strong communication skills and verbal comprehension. Additionally, she struggles with short term auditory memory skills when compared to same age peers; she struggles with focusing and needs reminders to stay on task in classes; she does need reminders to complete missing assignments, to stay organized, and reminders of what needs to be completed. However, it is noted she is quite independent and appropriate and her grades are average to above average in all areas (Exhibits IE, pgs 1-, 9-11, & 18-21, 16E, pgs 5-17, 17E, pgs 6-10, 2F, pgs 2-4, 4F, pgs 4-7, 12F, 17F, 18F, & 23F).

Further, as noted below, her assessments consistently show she was pleasant, cooperative, alert, smiling, interactive, and oriented to person, place, and time with full affect and in no acute distress. She was consistently appropriately dressed and groomed with appropriate eye contact and social relatedness. Her speech was consistently unremarkable and language consistently appropriate for age and content. Her mood was consistently euthymic, memory intact, knowledge level appropriate, impulse control adequate, and thought process linear, organized and goal directed with limited insight and judgment, but consistent with age. There was consistently no psychosis, unusual preoccupations/obsessions, delusions, hallucinations, or suicidal or homicidal ideation (Exhibits 2F, pgs 2-4, 5F, 11F, & 14F) Additionally, she does not have excessive absenteeism from school and she is able to perform age appropriate chores, such as cleaning her room. Further, she is able to watch movies, brush her teeth, wash her face, dress herself: use a computer, color, interact with the pet dog, play video games, and play with stuffed animals (Hearing & Exhibits 4E, 4F, pgs 2 & 3, 5F, pgs 2, 8, 16, 21, & 27, & 26F, pg 5).

(R. at 25-26.)

Plaintiff asserts that "the educational records overwhelmingly supports [sic] marked limitations in the area of Attending and Completing Tasks." (DE 13 at 19.)  She specifically refers to J.C.D.'s April 2016 and March 2017 annual Individualized Education Program (IEP) assessments, which she claims shows that J.C.D. had difficulties with attention and maintaining focus in school.  (*Id.* at 19-20, citing R. at 360-77, 378-99.)  She also cites to her hearing testimony that J.C.D. had trouble attending and completing tasks at home.  (*Id.*, citing R. at 57-62.)  However, the ALJ expressly considered the school records Plaintiff cites, as well as the hearing testimony, and recognized that J.C.D. exhibited difficulties with attention and maintaining focus on schoolwork, but found as explained above, after weighing all of the record evidence, that Plaintiff's difficulties in attending and completing tasks were less than marked.  (R. at 23-25)  As this Court has previously explained, "[h]aving a less than marked impairment certainly does not mean that the claimant is unimpaired, but the mere existence of an impairment does not necessarily mean … that a claimant is "markedly" impaired in a particular domain."  *Handley v. Comm'r of Soc. Sec.*, No. 15-12656, 2016 WL 4761606, at *8 (E.D. Mich. Aug. 18, 2016), *report and recommendation adopted*, 2016 WL 4729655 (E.D. Mich. Sept. 12, 2016).

In reaching his finding, the ALJ carefully reviewed and extensively recited the record evidence.  (R. at 19-23, 24-26.)  He supportably relied on the hearing testimony of the medical expert, Charles R. Black, M.D., that J.C.D.'s limitations in attending and completing tasks were "less than marked," as well as the other record opinion evidence finding similarly.  (R. at 19-21, 26, 70.)  Specifically, the ALJ noted that Traci Harp, J.C.D.'s resource room teacher, opined in September 2015 that Plaintiff exhibits "no limitations" in the domain of attending and completing tasks, as well as in the domains of acquiring and using information, interacting and relating with others, moving about and manipulating objects, and caring for herself.  (R. at 19-20, citing R. at 317-28.)  State agency physician Paul Liu, D.O. and speech and language pathologist, Marci Diedrich, completed a Childhood Disability Evaluation in September 2015 and opined that Plaintiff exhibits "no limitations" in the domains of attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being, and "less than marked" limitations in the domain of acquiring and using information.  (R. at 20, citing R. at 77-86.)  Likewise, Michele Moz, J.C.D.'s resource room teacher, opined in November 2016 that J.C.D. had "less than marked limitations" in the domains of attending and completing tasks, acquiring and using information, interacting with others, moving about and manipulating objects, and caring for herself.  (R. at 21, citing R. at 673-

12

82.)  Plaintiff does not challenge this opinion evidence, or present any opinion evidence that J.C.D. otherwise experiences marked or extreme limitations in the domain of attending and completing tasks.

The isolated facts taken from the record by Plaintiff, even if supportive of a different conclusion, do not demonstrate that the ALJ strayed from the "zone of choice" within which he must act to satisfy this Court's substantial evidence review.  The ALJ's findings "are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).  The ALJ carefully reviewed the record evidence in this case and thoroughly set forth his analysis and the facts supporting his findings.  These facts suffice to provide substantial evidence in support of the ALJ's finding that J.C.D. has less than marked limitations in attending and completing tasks.  *See Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 464 (6th Cir. 2014) ("We must 'accept the agency's factual finding []' when it is supported by substantial evidence, even when substantial evidence could justify a different result.") (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).  Nor can this Court re-weigh the evidence, which is what Plaintiff seemingly asks it to do in pointing out other aspects of the record which she believes to be favorable to her desired outcome.  *See Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir.

13

2003) ("Generally, [the] Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner even if it finds that the evidence 'preponderates against the Commissioner's decision.'") (citation omitted).

Accordingly, Plaintiff has failed to show that the ALJ's finding that J.C.D. experienced less than a marked limitation in attending and completing tasks is not supported by substantial evidence, and her claim of error should be denied.

### b.   Caring for yourself

The domain of caring for yourself refers to "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). At the school-age level, a child should:

> . . . be independent in most day-to-day activities (e.g., dressing yourself, bathing [her]self), although [she] may still need to be reminded sometimes to do these routinely. [She] should begin to recognize that [she is] competent in doing some activities and that [she has] difficulty with others. [She] should be able to identify those circumstances when [she] feel[s] good about [her]self and when [she] feel[s] bad. [She] should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. [She] should begin to demonstrate consistent control over [her] behavior, and [she] should be able to avoid behaviors that are unsafe or otherwise not good for [her]. [She] should begin to imitate more of the behavior of adults [she] know[s].

20 C.F.R. § 416.926a(h)(2)(iv).

14

The ALJ found with respect to this functional domain that:

> <u>The claimant has less than marked limitation in the ability to care for her.</u> The claimant's assessments consistently show she was pleasant cooperative, alert, smiling, interactive, and oriented to person, place, and time with full affect and in no acute distress. She was consistently appropriately dressed and groomed with appropriate eye contact and social relatedness. Her speech was consistently unremarkable and language consistently appropriate for age and content. Her mood was consistently euthymic, memory intact, knowledge level appropriate, impulse control adequate, and thought process linear, organized and goal directed with limited insight and judgment, but consistent with age. There was consistently no psychosis, unusual preoccupations\ obsessions, delusions, hallucinations, or suicidal or homicidal ideation (Exhibits 2F, pgs 2-4, 5F, 11F, & 14F). Additionally, she does not have excessive absenteeism from school and she is able to perform age appropriate chores, such as cleaning her room. Further, she is able to watch movies, brush her teeth, wash her face, dress herself, use a computer, color, interact with the pet dog, play video games, and play with stuffed animals (Hearing & Exhibits 4E, 4F, pgs 2 & 3, 5F, pgs 2, 8, 16, 21, & 27, & 26F, pg 5).

(R. at 28-29.)  Again, the ALJ also properly relied on the opinions of the medical expert at the hearing, as well as the opinions of the State agency reviewers and J.C.D.'s teachers that she had no limitation or "less than marked" limitation in caring for herself.  (R. at 19-21, citing R. at 71, 77-86, 317-28, 673-82.)  The ALJ thus articulated substantial evidence supporting his finding that J.C.D. experienced less than marked limitations in this domain.

Plaintiff criticizes the ALJ for considering that J.C.D. was consistently "pleasant, cooperative, alert, smiling, [and] interactive."  (DE 13 at 21.)

However, that was a valid consideration by the ALJ.  *See Lintern v. Colvin*, No. 14-12034, 2015 WL 6541692, at *6 (E.D. Mich. Oct. 29, 2015) (the ALJ reasonably considered that the plaintiff "was smiling and participating in class [and] she was pleasant, clever and bright in social work meetings" in finding that plaintiff had less than marked limitation in the ability to care for herself); SSR 09-7p, 2009 WL 396029, at *3 (Feb. 7, 2009) ("express[ing] positive feelings appropriately" is one marker of ability to care for oneself). Similarly, contrary to Plaintiff's contention, the ALJ properly considered J.C.D.'s ability to brush her teeth, wash her face, and dress herself.  *See* SSR 09-7p, 2009 WL 396029, at *3 (this domain "involves the emotional ability to engage in self-care activities, such as feeding, dressing, toileting, and maintaining hygiene and physical health").  While Plaintiff claims that the ALJ disregarded testimony that J.C.D. "has no friends and isolates herself as much as possible and could not even speak to the ALJ without speaking through a stuffed animal" (DE 13 at 21), this functional domain does not concern "the ability to relate to other people," which is addressed instead under the domain of interacting and relating with others, *see* SSR 09-7p, 2009 WL 396-29, at *2, a domain finding Plaintiff does not challenge.[2]

---

[2] I note that, under the domain of "interacting and relating to others," the ALJ in fact did expressly consider reports that J.C.D. "has no friends and plays by herself" and that "she does not relate to others and has difficulty carrying on

16

Plaintiff also faults the ALJ for not specifically discussing a July 19, 2016 report that J.C.D. picked her skin and was diagnosed with a skin-picking disorder (based on her mother's report), which Plaintiff claims is a type of self-mutilation.  (DE 13 at 21-22.)  Among the examples of limited functioning in this domain is the engaging in self-injurious behavior, which includes suicidal thoughts, self-inflicted injury and refusal to take medication.  20 C.F.R. § 416.926a(k)(3)(iv).  While it is true the ALJ made no specific mention of the skin-picking diagnosis, the ALJ *did* consider that treatment visit, and gave substantive weight to Dr. Dayna Jenay Leplatte-Ogini's opinion that J.C.D. exhibited "moderate" symptoms that day and that she had no "overt" concerns about J.C.D.'s safety or aggression levels. (R. at 18-19, citing R. at 510.)  The ALJ was not *required* to discuss this evidence, as it is well-settled that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (internal citation omitted); *see also Lintern v. Colvin*, No. 14-12034, 2015 WL 4601124, at *5 (E.D. Mich. June 16, 2015) ("The ALJ is required to make a reasoned decision based upon all the evidence, but

conversations," in finding that she has a marked limitation in that functional domain.  (R. at 27.)

17

does not need to discuss every detail in the record.") (citation omitted), *report and recommendation adopted*, 2015 WL 6541692 (E.D. Mich. Oct. 29, 2015).  Further, "the mere diagnosis of an impairment does not render an individual disabled nor … reveal anything about the limitations, if any, it imposes upon an individual," *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000), and "the mere existence of an impairment does not necessarily mean … that a claimant is 'markedly' impaired in a particular domain."  *Handley*, 2016 WL 4761606, at *8.

Plaintiff otherwise generally cites to record evidence which she argues supports a contrary conclusion to that reached by the ALJ, including hearing testimony, Dr. Leplatt-Ogini's treatment records, and a speech and language evaluation by Julie Holloway.  (DE 13 at 20-23, citing R. at 312, 504-30, 612-17.)  However, the ALJ expressly considered this same evidence and found that it supported a less than marked limitation in the domain of caring for yourself.  (R. 18-22, 28-29.)  Plaintiff's argument suggests that because there is some evidence that J.C.D. has a limitation in this area, that limitation must be at least marked.  However, as explained above, "the mere existence of an impairment does not necessarily mean … that a claimant is 'markedly' impaired in a particular domain."  *Handley*, 2016 WL 4761606, at *8.   And,

it is not sufficient for Plaintiff to point to "pieces of evidence" on which the

ALJ could have based a finding in her favor. Her burden on appeal is much

higher. She must "demonstrate that the ALJ's determination that [J.C.D.]

was not disabled is not supported by substantial evidence." *Peterson v.*

*Commissioner*, 552 F. App'x 533, 540 (6th Cir. 2014).  This Court may not

reweigh the evidence and substitute its own judgment for that of the

Commissioner merely because substantial evidence exists in the record to

support a different conclusion. Rather, the substantial evidence standard

allows considerable latitude to administrative decision makers, and it

presupposes there is a "zone of choice" within which the decision makers

can go either way, without interference by the courts.  *See Blakley*, 581 F.3d

at 406.  The record here reflects that the ALJ carefully considered the entire

record in arriving at his conclusions.  He acknowledged that J.C.D. had

difficulty in this domain, but provided a thorough and accurate explanation

for why these difficulties did not rise to a marked or extreme limitation.

Plaintiff's claim of error therefore should be denied.

## F. Conclusion

The ALJ's decision was supported by substantial evidence, and no legal

error which would lead to a different result has been shown.  For the foregoing

reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for

summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

20

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 21, 2019          s/*Anthony P. Patti*
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE